# In the United States Court of Federal Claims

No. 15-254C

BID PROTEST

(Filed Under Seal: June 12, 2015 | Reissued: June 30, 2015)[*]

| | |
|---|---|
| WIT ASSOCIATES, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) Post-Award Bid Protest; Tucker Act; 28 |
| v. | ) U.S.C. § 1491(b); Subject Matter |
| | ) Jurisdiction; RCFC 12(b)(1); Standing; |
| THE UNITED STATES OF AMERICA, | ) FAR 52.212-1(c); Expired Offer; Waiver; |
| | ) Period for Acceptance; Revived Offer. |
| Defendant, | ) |
| | ) |
| and | ) |
| | ) |
| PLATINUM SERVICES, INC., | ) |
| | ) |
| Defendant-Intervenor. | ) |
| | ) |
| | ) |

*David J. Taylor*, Law Office of David J. Taylor, Washington, D.C., for plaintiff. With him Of Counsel, David B. Dixon, Buchanan Ingersoll & Rooney PC, Washington, D.C.

*Alexander O. Canizares*, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With him on the briefs were *Claudia Burke*, Assistant Director, *Robert E. Kirschman*, Jr., Director, *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General of the Department of Justice and Of Counsel, *David B. Cook* of the Department of the Navy NAVSUP Fleet Logistics Center.

## OPINION AND ORDER

**KAPLAN, Judge.**

---

[*] This Opinion was previously issued under seal on June 16, 2015, and the Clerk of the Court entered judgment on June 16, 2015. The parties were given the opportunity to propose redactions on or before June 29, 2015. Because the Court did not receive any such proposals, the Court reissues its decision without redactions.

Plaintiff WIT Associates, Inc. ("WIT") is the incumbent contractor providing household moving services for Department of Defense personnel stationed at the Naval Air Station at Guatanamo Bay, Cuba.  In this post-award bid protest, WIT challenges the Navy's award of a contract for similar services to defendant-intervenor Platinum Services, Inc. ("Platinum" or "intervenor").

Currently before the Court are WIT's motion for judgment on the administrative record and the government's and Platinum's motions to dismiss for lack of standing or, in the alternative, cross-motions for judgment on the administrative record.  For the reasons set forth below, the government's and intervenor's motions to dismiss is **DENIED IN PART** and **GRANTED IN PART**.  WIT's motion for judgment on the administrative record is **DENIED** and the government's and intervenor's cross-motions are **GRANTED**.

## BACKGROUND[2]

### I.    The Solicitation

On August 15, 2013, the Navy Supply (NAVSUP) Fleet Logistics Center in Jacksonville, Florida, issued Solicitation No. N68836-13-R-0013 ("Solicitation") as a Request for Proposals ("RFP"), for household goods moving and storage services for Department of Defense personnel stationed at the Naval Air Station at Guatanamo Bay, Cuba.  Administrative Record ("AR") 1:1-145.[3]

The Solicitation called for a firm-fixed-price, indefinite-delivery, requirements contract. AR 1:73.  The period of performance under the Solicitation was from October 1, 2013 through September 30, 2014, with four one-year option periods.  AR 1:3-11.  The Solicitation incorporated Federal Acquisition Regulation (FAR) clauses governing commercial items contracts, including FAR 52.212-1(b) ("Instructions to Offerors – Submission of offers") and FAR 52.212-2 ("Evaluation – Commercial Items"), with additions/amendments specific to this procurement.  AR 1:80-85; see FAR 12.301(b)(1) (providing that FAR 52.212-1 should be inserted in solicitations for the acquisition of commercial items).

---

[2] The background constitutes findings of fact made by the Court from the administrative record of the procurement filed pursuant to RCFC 52.1(a).  See Bannum, Inc. v. United States, 404 F.3d 1346, 1356 (Fed. Cir. 2005) (observing that bid protests "provide for trial on a paper record, allowing fact-finding by the trial court").

[3] Citations to the administrative record refer to the corrected administrative record filed on April 27, 2015.  The record is paginated sequentially and also divided into tabs.  In citing to the administrative record, the Court will designate the tab, followed by page number.  For example, AR 1:1-145 refers to page 1 to 145, which is located in Tab 1.

Of particular significance to this case, the Solicitation incorporated the language of FAR 52.212-1(c)[4] ("Period for acceptance of offers"), which provides that "[t]he offeror agrees to hold the prices in its offer firm for 30 calendar days from the date specified for receipt of offers, unless another time period is specified in an addendum to the solicitation."  AR 1:80.

The Solicitation provided that the award would be made on a lowest-price, technically acceptable basis, and identified three evaluation factors: technical capability, past performance, and price.  AR 1:82-84.  "Corporate experience," i.e., experience performing the type of work required by the contract in a remote location, was a sub-factor of technical capability.  AR 1:83.

## II.    Offers from WIT and Platinum

The Solicitation required that proposals be submitted by August 30, 2013.  AR 1:73. The Navy received offers from two parties:  WIT and Platinum.

WIT is a company incorporated in Hunt Valley, Maryland, affiliated with The Guardian Services Group, Ltd and Guardian Moving and Storage Company, Inc.  AR 32:1467-68.  At the time of the Solicitation, WIT was the incumbent and had been providing moving and storage services at Guantanamo Bay for the Navy for several years.  AR 32:1471, 1483.  WIT's President is Eugene Smoot.  AR 32:1469.

Platinum is a Maryland corporation that is in the moving and storage industry.  AR 31:1423-24.  Platinum was started in 2005 by Mario Smoot, the company's sole shareholder and President and Chief Executive Officer.  AR 31:1423-24.  Mario Smoot and Eugene Smoot are brothers.  AR 31:1423.  Prior to starting Platinum in 2005, Mario Smoot was an owner of WIT and for some time was President of WIT and Guardian Services Group, Ltd.   AR 31:1423-24.

## III.    Initial Award to Platinum, WIT's GAO Protest, and the Navy's Subsequent Corrective Action Resulting in Award of the Contract to WIT

After evaluating the proposals, effective November 15, 2013, the Navy awarded the contract to Platinum as the lowest-priced, technically acceptable offeror.  AR 3:215; see AR 27f:1396.

On November 22, 2013, WIT filed a protest before the Government Accountability Office (GAO) challenging the Navy's award to Platinum.  AR 5:336-374.  The Navy issued a stop work order suspending Platinum's performance pending resolution of WIT's protest, AR 4:335, and awarded a bridge contract to WIT to avoid a disruption in services to the Government. AR 24b:884.

The Navy then decided to take corrective action to re-evaluate the proposals submitted by WIT and Platinum, AR 24f:1107, and, on December 5, 2013, the GAO dismissed WIT's protest.

---

[4] The Solicitation identified the source of this language as FAR 52.212-1(12) rather than FAR 52.212-1(c).  For purposes of this opinion, and for the sake of consistency, this Court will use the citation set forth in the Solicitation—FAR 52.212-1(12).

AR 8:469.  After re-evaluating the proposals, on March 13, 2014, the Navy awarded the contract to WIT and terminated Platinum's contract for convenience.  AR 12:512, 24g:1109-1117.  WIT's contract was subsequently extended and was set to expire on March 31, 2015.  AR 648.[5]

## IV.    The Army's Proposed Debarment of Platinum and Settlement Agreement

In the meantime, on February 18, 2014, during the pendency of WIT's protest before the GAO, the Department of the Army (the Army) issued a Notice proposing that Platinum and its owner, Mario Smoot, be debarred from Government contracting, citing possible improper conduct in connection with Platinum's performance of Government contracts.  AR 13:634, 16:743-45.  The proposed debarment was based upon information disclosed by the Army's Major Procurement Fraud Unit concerning Platinum and its owner.  AR 13:633-34.  As a result of the proposed debarment, Platinum had an exclusion in the System for Award Management (SAM) online database.  AR 50:1633.

After Platinum and Mario Smoot responded to the Army's proposed debarment with information and arguments, the Army and Platinum entered into an Administrative Settlement Agreement (the Settlement Agreement), dated April 9, 2014, which withdrew the proposed debarment in exchange for Platinum's agreement to take a number of actions.  These actions included instituting a contractor responsibility program, creating a Code of Business Ethics and Conduct, adopting a training program on ethics and Government contracting, and appointing an ombudsman to oversee Platinum's compliance with the agreement.  AR 13:635-39.  The Settlement Agreement was effective as of April 9, 2014 and expires on April 9, 2017.  AR 13:645.

## V.    The Navy's Amended Solicitation and Request for Revised Proposals

On April 10, 2014, Platinum filed a protest before the GAO challenging the termination of its contract and the award to WIT, alleging that the agency's evaluation of Platinum's offer under the corporate experience sub-factor was unreasonable.  AR 15:709-41.  Upon review of the protest and the Navy's requirements, the Navy decided to eliminate the corporate experience sub-factor.  AR 24b:887.  See AR 25:1125-26; 27b:1176.  The Navy notified the GAO that it would take corrective action to amend the evaluation criteria in the Solicitation, request and evaluate revised proposals, and make a new source selection.  AR 20:848, 24h:1118.  The GAO then dismissed Platinum's protest as moot.  AR 21:850-51.

On May 16, 2014, the Navy issued Amendment 0002 to the Solicitation, which eliminated the corporate experience sub-factor in the Technical Evaluation.  AR 24e:1103-06.  Amendment 0002 gave offerors five business days to submit revised technical proposals, and extended offerors the "opportunity to submit final revised price proposals."  AR 24e:1103.  The amended Solicitation set a deadline for the submission of revised proposals of May 23, 2014 at 2:00 p.m.  Id.

_____

[5] After WIT filed this protest on March 11, 2015, the government agreed to extend WIT's bridge contract again until June 30, 2015.

The only substantive provisions of the Solicitation affected by Amendment 0002 concerned the evaluation criteria in FAR 52.212-2.  AR 24e:1104-1106.  The amendment stated that provisions in the initial Solicitation that were not revised remained in effect, stating: "Except as provided herein, all terms and conditions of the document referenced in item 9A [Solicitation No. N68836-13-R-0013], as heretofore changed, remain[] unchanged and in full force and effect."  AR 24e:1103.

On May 16, 2014, the Navy sent the revised Solicitation to Platinum and WIT and notified them that they had the "opportunity to submit a revised price proposal."  AR 29:1407-12; 30:1413-18.  The contracting officer, Mattie Washington, reminded WIT and Platinum that "[t]he deadline for receipt of proposals is 23 May 2014 at 2:00 pm" and advised:  "As the Government may elect to proceed with award based on the revised proposals, your submittal should contain your most favorable terms and conditions from a pricing standpoint."  AR 29:1412, 30:1418.

## VI.   Protests of Revised Solicitation and Submission of Revised Proposals

On May 22, 2014, Platinum and WIT filed parallel protests before GAO challenging the Navy's decision to delete the corporate experience sub-factor in the Solicitation, with each arguing that they were entitled to the contract.  AR 23:862-82, 26:1139-41.

The next day, WIT and Platinum each submitted revised technical and pricing proposals to the Navy in response to the amended Solicitation.  AR 31:1419-66, 32:1467-1508, 33:1509-1591.  Platinum's revised price was $2,084,375.  AR 51:1629.  WIT's revised price was $1,225,230, AR 51:1629, less than half the price it offered in its initial proposal:  $2,866,350.  AR 27:1163, 51:1630-31.  In a letter accompanying its revised proposal, WIT's President, Eugene Smoot, noted, "we have been able to refine our proposed pricing, presenting even a greater cost savings to the Government."  AR 32:1468.

## VII.   The Navy's Evaluation, Source Selection, and Award to Platinum

On August 21, 2014, the GAO denied Platinum and WIT's respective protests, finding that the Navy's corrective action was reasonable.  AR 35:1594-97.  With the protests resolved, the Navy's Technical Evaluation Board convened between September 23 and October 19, 2014 to evaluate the revised proposals that had been submitted by WIT and Platinum on May 23, 2014.  AR 51:1624.  On October 1, through its attorney, WIT requested "guidance as to what the process will be and the timing will be after the dismissal of the protest."  AR 37:1602.  By letter dated October 17, 2014, the Navy notified WIT that "[t]he source selection and award decisions are anticipated to be complete by November 30, 2014."  AR 37:1603.

On or about November 7, 2014, the Navy's three-member Technical Evaluation Board concluded, based upon its review of WIT and Platinum's respective technical proposals, that both companies' technical proposals were technically acceptable.  AR 39:1605-07, 40:1608-11, 51:1625.

With no award announced by November 30, 2014, on December 2, 2014, WIT's President, Eugene Smoot, sent an email to Vera Smith, a Contract Specialist at the NAVSUP Fleet Logistics Center in Jacksonville, Florida, asking about "the status of the decision/award." AR 41:1612. Ms. Smith responded the following day:  "We are in the process of making a decision and will be contacting the companies soon."  Id.

### A. The Navy's December 2014 and January 2015 Email Exchanges with WIT and Platinum

On December 23, 2014, Ms. Smith sent separate emails to the Presidents of WIT and Platinum, Eugene and Mario Smoot, respectively.  AR 42:1613, 43:1614.  In each of her emails, which are substantively identical, Ms. Smith wrote, in full:

> I am e-mailing you in reference to your proposal submitted on 23 May 2014 for the above referenced solicitation.  The government would to [sic] know if your proposed pricing still is valid and will it be valid until 1 March 2015? The delay to completing the award is due to Legal Counsel having some other urgent actions that they must address prior to the end of the month and the package for the above referenced solicitation having to be forwarded to our by [sic] headquarters for review prior to an award being made.  Please provide your response.

AR 42:1613, 43:1614.  Mario Smoot of Platinum responded to Ms. Smith's email that same day, saying,

> I have no choice but to extend my prices until the 1ST of March 2015.  Platinum has already purchased trucks, trailers, packing materials, forklifts, etc.  I've also incurred the cost of shipping some of the items to GTMO.  All of this was done in November 2013 when we were initially awarded the contract and told to proceed.  Please realize that the equipment sitting there for more than a year now has depreciated in value and may not be in the same condition as when we purchased it.  Anything that can be done to expedite the award would be greatly appreciated.

AR 44:1615.

WIT's President, Eugene Smoot, also responded to Ms. Smith's email that day.  AR 45:1616.  He wrote in full:  "Thank you for your communication.  As of today it has been two hundred and fourteen (214) days since our proposal was submitted.  WIT Associates, Inc. want and need to submit a final proposal revision ("FPR") with updated rates given the economic conditions."  AR 45:1616.

Ms. Smith did not respond to Eugene Smoot's December 23, 2014 email.  Nor did she respond to his January 5, 2015 follow-up email which re-forwarded the December 23, 2014 email and stated as follows:  "Good morning Mrs. Smith. We have not received any response to our communication below dated December 23, 2014."  AR 46:1617.

On January 27, 2015, Eugene Smoot wrote Ms. Smith asking about the status of the award.  He asked Ms. Smith to "[p]lease advise the [sic] status of the award" noting that "[w]e never received a response to our communication advising you that we need to submit revised pricing."  AR 47:1619.  On January 29, 2015, he wrote Ms. Smith again, noting that the base year of the contract ends March 31, 2015 and asked: "Will the current matter be resolved by then?  What is the status.[sic]"  AR 48:1620.

The next day, January 30, 2015, Ms. Smith responded as follows:  "I apologize for the delay in responding.  Hopefully the matter will be resolved soon.  I will talk to the contracting officer to determine what the government will do if the matter is not resolved by 31 March 2015.  Due to the numerous protests, we are having to forward the package to headquarters for review."  AR 49:1621.

Eugene Smoot again emailed Ms. Smith on January 31, 2015, observing that Ms. Smith "did not address our second notice on January 27th for WIT's need to submit revised/updated pricing.  Please address."  AR 50:1622.  Ms. Smith did not respond to this email.

### B.  The Navy's Decision to Order and Cancel a Pre-Award Survey of WIT

In the meantime, a Pre-Award Survey of WIT to determine its responsibility was cancelled.  On December 12, 2014, the Navy had asked the Defense Contract Management Agency (DCMA) to conduct such a survey.  AR 73:1891-92.  The Navy noted that WIT's revised price proposal was fifty-nine percent lower than its initial price proposal and that the Navy wished to "determine that the contractor had adequate financial resources prior to contract award."  AR 73:1892.

On December 30, Mr. Swann of the DCMA informed Ms. Smith that the earliest the Pre-Award survey would be available was March 20.  AR 73:1876.  Ms. Smith responded the same day that although the agency "anticipat[ed] receiving it sooner so that [it] could make an award prior to March," under the circumstances, March 20th would suffice.  AR 73:1875-76.  On January 14, 2015, however, Ms. Smith emailed Mr. Swann requesting cancellation of the pre-award survey.  AR 73:1874.  The next day, she emailed him again stating that "[o]ur legal counsel just came to see me this morning and they wanted to hold off on cancelling the pre-award survey.  Is that possible?  If not, would I have to submit a new request for the pre-award survey?"  Def.'s Resp. Ct.'s May 29, 2015 Order at Ex. 1, June 2, 2015, ECF No. 45.  See Order Correcting AR, June 8, 2015, ECF No. 46.  The following day, without receiving a response from Mr. Swann or DCMA, she emailed Mr. Swann again asking him to "proceed with cancelling the pre-award survey" and to "[d]isregard the e-mail that was sent yesterday."  AR 73:1873.  Mr. Swann confirmed cancellation of the pre-award survey on January 29, 2015.  Id.

### C.  The Navy's Evaluation and Award to Platinum

On February 10, 2015, the Navy awarded Contract No. N68836-15-D-0002 to Platinum, with a base period of April 1, 2015 to March 31, 2016, and four one-year option periods.  AR 54:1641-51. The basis for the Navy's award was set out in a document titled "Contract Review Board Presentation" (AR 51:1623-33), which was signed on January 27, 2015 by the Contracting

Officer, Mattie Washington, and by the Contract Specialist, Vera Smith.  AR 52:1623.  It was approved by David Cook, counsel, on January 30, 2015.  Id.  Finally, the Contract Review Board signaled its concurrence in the award of the contract to Platinum on February 6, 2015, through the signatures of its members.  Id.

The twelve-page presentation included an overview of the procurement (Section I), a discussion of the Technical Evaluation Board's non-price evaluation of Platinum's and WIT's revised technical proposals (Section III), a Price/Cost Analysis (Section IV), and a Source Selection Decision (Section V).  AR 51:1624-1633.  Section VI consisted of a Contractor Responsibility Determination pursuant to FAR 9.104.  AR 52:1635-36.

Most important for purposes of the issues raised in this protest is the Contract Review Board's discussion of the exchange of emails between the Navy and WIT and the Navy and Platinum that occurred on December 23, 2014.  AR 51:1630.  The Board explained that, on December 23, 2014, "the offerors were asked to confirm that their prices proposed on 23 May 2014 were still valid."  AR 51:1630.  "Platinum Services, Inc.," the Board noted, "stated that their prices were still valid."  Id.  WIT Associates, the Board observed, "proposed the lowest price and they were technically acceptable."  AR 51:1624.  "However," the Board further observed, "WIT Associates, Inc stated, 'that it had been over 200 days since proposals were submitted and [that] [it] want[ed] and need[ed] to submit a final proposal revision with updated rates given the economic conditions.'"  AR 51:1630.  The Board explained that "[u]nder [the] terms of [the] solicitation, FAR 52.212-1, Instructions to Offerors – Commercial Items (FEB 2012) the offeror agreed to hold the prices in its offer firm for 30 calendar days from the date specified for receipt of offers, unless another time period is specified."  Id.  Accordingly, the Contracting Board reasoned, "WIT Associates' offer expired 23 June 2014."  The Board found that "WIT Associates, Inc. declined to extend their offer."  AR 51:1630.  "[T]herefore," it concluded, "Platinum Services, Inc. is the only valid offeror at $2,084,375.00."  AR 51:1630; see also AR 51:1624-25.

Having concluded that WIT's offer had expired and had not been extended, the Navy proceeded to evaluate Platinum's price proposal as the only valid offeror.  AR 51:1630.  The Navy concluded that Platinum's price proposal was fair and reasonable.  AR 51:1630-33 (citing FAR 15.404-1(b)(2)(ii)).

**D.  The Navy's Determination that Platinum Was Responsible**

On the same day that the Contracting Review Board signed off on the award to Platinum, February 6, 2015, the Contracting Officer, Mattie Washington, issued a Responsibility Determination, in which she concluded that Platinum "had been determined to be responsible within the meaning of FAR Subpart 9.104."  AR 52:1635.  Ms. Washington analyzed Platinum's proposal according to the seven factors under FAR Subpart 9.014-1.  AR 52:1635-36.  She confirmed that, based upon a search of the SAM database, Platinum did not appear on the "List of Parties Excluded from Federal Procurement and Non-Procurement Programs" and "is otherwise qualified and eligible to receive an award under applicable law and regulations."  Id.

Ms. Washington considered the fact that as a result of the Army's Notice of Proposed Debarment, Platinum had an exclusion in the SAM database from February 18, 2014 until the Administrative Settlement Agreement was entered on April 9, 2014.  AR 52:1636.  She observed that the Army had "determined that the terms and conditions of the agreement provided adequate assurance that the interests of the Government would be protected," noting the agreement's various provisions to monitor Platinum's compliance with the terms of the agreement.  Id.

The Contract Review Board affirmed Ms. Washington's analysis.  AR 51:1633.  Citing the fact that the Administrative Settlement Agreement required appointment of an ombudsman to monitor Platinum and that any violation of the agreement could constitute independent grounds for debarment, the Contract Review Board noted that the "Army determined that the terms and conditions of the agreement provided adequate assurance that the interests of the Government would be protected and the debarment or suspension would be lifted immediately upon the effective date of the agreement."  Id.  The Contract Review Board concluded:  "Based on the consideration of these matters, it is determined that the Government's interests are protected." Id.  The Board's presentation noted that Platinum was currently registered in the SAM database, and "is not listed on the Excluded Parties List."  Id.  "Therefore, it is determined that the prospective contractor is responsible within the meaning of FAR 9.104."  Id.; see also AR 51:1626 (noting that the Navy queried the Federal Awardee Performance and Integrity Information System (FAPIIS), which referred to the April 9, 2014 settlement).

## VIII.   The Navy's Post-Award Notification to WIT and Correspondence

On February 11, 2015, Ms. Washington notified WIT and Platinum that the Navy had awarded the contract to Platinum.  AR 55:1758.  See 56:1759, 57:1761 (email notifications from Ms. Smith to the presidents of WIT and Platinum).  In her letter to WIT, Ms. Washington noted: "Your proposal became invalid when, on 23 December 2014, you declined to extend your proposal, which by the terms of the solicitation remained valid for 30 days beyond 23 May 2014. That 30 day period ended on 22 June 2014."  AR 55:1758.  Ms. Washington added that, "if a post-award debriefing is desired, a written request must be submitted to the contracting officer within three days of receipt of this letter."  Id.; see also AR 56:1759.

On February 12, 2015, David J. Taylor, Esq., WIT's counsel, sent an email to Ms. Washington with a letter attached.  AR 58:1762.[6]  Mr. Taylor asserted that the Navy's award to Platinum was "illegal."  AR 58:1763-64.  He suggested that Platinum was being investigated for "further debarment by the Suspension & Debarment Official at Ft. Belvoir and CID at Quantico" and that "I expect Platinum to be debarred again in the near future."  AR 58:1764.  Mr. Taylor suggested that the Navy should have excluded Platinum from the procurement pursuant to FAR 9.103 and FAR 9.405.  Id.

That same day, WIT's President, Eugene Smoot, sent Ms. Washington an email requesting a post-award debriefing.  AR 59:1765.  Ms. Smith, the contracting specialist, asked Mr. Smoot what information he was seeking in the debriefing.  AR 61:1768.

---

[6]  The letter attached to Mr. Taylor's letter is dated April 11, 2015.  AR 1763.  This appears to be a typographical error.

On February 18, 2015, Ms. Washington sent an email to Eugene Smoot responding to his email of January 27, 2015.  AR 63:1771.  Ms. Washington stated:  "Due to your refusal on [23] December 2014, to extend your previous offer dated 23 May 2014, the award under the subject solicitation was made to Platinum Services, Inc. [on] 11 February 2015, the only offeror with a technically acceptable offer[] with a valid price."  Id.

Also on February 18, 2015, Ms. Washington responded by letter to Mr. Taylor's letter.  AR 64:1773-74.  She explained that, before the award was made, "the SAM's database was checked.  Platinum Services, Inc. was not listed on the Excluded Parties List and was determined responsible within the meaning of FAR 9.104."  AR 64:1774.

The following day, February 19, 2015, Eugene Smoot and Mr. Taylor sent Ms. Washington emails asking about the date and time of a debriefing.  AR 65:1777, 66:1778.  Mr. Taylor also asked Ms. Washington to reverse her award decision because, he said, Platinum "is NOT a responsible bidder."  AR 66:1778.  That same day, Ms. Smith informed Eugene Smoot by email that "[d]ue to your refusal on 23 December 2014 to extend your previous offer dated 23 May 2014, your offer was rendered invalid and WIT Associates was no longer considered an offeror on the solicitation.  Therefore, your company is not entitled to a debrief."  AR 67:1779.

## IX.    This Protest

WIT filed this protest on March 11, 2015 alleging in three counts that (1) the government failed to follow the requirements of FAR Part 9 and wrongfully found Platinum to be responsible; (2) the government improperly excluded WIT from further consideration in the procurement because the requirement for which the exclusion was based was not issued in an addendum to the Solicitation, and WIT was not immediately informed of the agency's decision to exclude its offer from competition; and (3) the government wrongfully denied WIT a debriefing following the award to Platinum.[7]  Compl. ¶¶ 47-62.  Plaintiff requests the contract to Platinum be permanently enjoined and that the contract be awarded to WIT.  Compl. at 15.  In the alternative, plaintiff requests offerors be given a reasonable time to submit revised prices.  Id. at 15-16.

## DISCUSSION

## I.    Jurisdiction

The government and Platinum have moved to dismiss this case under Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC"), arguing that the Court lacks subject matter jurisdiction because the plaintiff does not have standing to pursue the protest.  Def.'s Mot. 19, Apr. 24, 2015, ECF No. 34; Intervenor's Mot., Apr. 24, 2015, ECF No. 35.  According to the defendants, because WIT's offer expired and WIT declined to revive its offer, WIT was

---

[7] In its motion for judgment on the administrative record, WIT has not briefed its claim regarding the failure to provide it with a debriefing.  Accordingly, the Court concludes that such claim has been waived.

ineligible for award.  Def.'s Mot. 21-19; Intervenor's Mem. in Supp. of Mot. 22-23, April 24, 2015, ECF No. 36.  Therefore, they contend, WIT lacks standing to pursue its protest as an "interested party."  Id.

Plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence.  Brandt v. United States, 710 F.3d 1369, 1373 (Fed. Cir. 2013).  In deciding a motion to dismiss for lack of subject matter jurisdiction, the court accepts as true all undisputed facts in the pleadings and draws all reasonable inferences in favor of the plaintiff.  Trusted Integration, Inc. v. United States, 659 F.3d 1159, 1163 (Fed. Cir. 2011).

The Court of Federal Claims has "jurisdiction to render judgment on an action by an interested party objecting to . . . a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1) (2012).  A party is an "interested party" with standing to bring suit under 28 U.S.C. § 1491(b)(1) if the party "is an actual or prospective bidder whose direct economic interest would be affected by the award of the contract."  Orion Tech., Inc. v. United States, 704 F.3d 1344, 1348 (Fed. Cir. 2013).  An offeror has a direct economic interest if it suffered a competitive injury or prejudice.  Myers Investigative & Sec. Servs., Inc. v. United States, 275 F.3d 1366, 1370 (Fed. Cir. 2002) (holding that "prejudice (or injury) is a necessary element of standing").

In a post-award bid protest, the protestor has suffered prejudice if it would have had a "substantial chance" of winning the award "but for the alleged error in the procurement process." Info. Tech. & Applications Corp. v. United States, 316 F.3d 1312, 1319 (Fed. Cir. 2003).  See also Weeks Marine, Inc. v. United States, 575 F.3d 1352, 1359 (Fed. Cir. 2009); Rex Serv. Corp. v. United States, 448 F.3d 1305, 1308 (Fed. Cir. 2006).  "In other words, the protestor's chance of securing the award must not have been insubstantial."  Info. Tech., 316 F.3d at 1319.

The Court concludes that WIT has standing to challenge the agency's decision that it should not be considered for award because its offer had expired.  First, it cannot be disputed that—at least for some period of time—WIT was an actual offeror on the Solicitation.  And while the agency found to the contrary, WIT contends that it retained the status of an offeror up until the time that the Navy awarded the contract to Platinum, and that the Navy's decision not to consider WIT's offer was legally erroneous.

Further, WIT would have had a "substantial chance" of winning the award "but for the alleged error in the procurement process"—namely, the agency's decision that WIT's offer had expired and had not been revived.  See Info. Tech. & Applications Corp., 316 F.3d at 1319. Thus, WIT was the only offeror other than the awardee, and its proposal was lower priced.

The Court does not find persuasive the arguments of the government and the intervenor that WIT lacked standing because its offer had expired and it failed to revive the offer when given an opportunity to do so.  See Def.'s Mot. 20 (citing Fed. Data Corp. v. United States, 911 F.2d 699, 705 (Fed. Cir. 1990) for the proposition that "a bidder that withdraws itself from the procurement lacks standing to challenge the agency's procurement decisions").  This contention conflates the issue of plaintiff's standing with the merits of its claims and begs the question

before the Court.  In effect, what the government is saying is that WIT cannot challenge the government's decision that its offer had expired and was not revived because WIT's offer expired and was not revived.  Because WIT is "disputing the very point upon which the government relies to try to eliminate its standing," the Court concludes that WIT's arguments regarding the continuing validity of its offer should be addressed on the merits, and not in the context of a motion to dismiss for lack of jurisdiction.  See Castle-Rose, Inc. v. United States, 99 Fed. Cl. 517, 523 (2011) (rejecting similar argument that protestor lacked standing to challenge government's rejection of its offer as late, explaining that "[w]hether or not the submission was late is a question to be resolved on the merits, and the answer to that question should not be presumed in the defendant's favor to deny a plaintiff the substantive review to which it is entitled"); see also Global Military Mktg. v. United States, 118 Fed. Cl. 624, 630 (2014) (observing that "[i]f plaintiff succeeds in arguing that the agency erred in rejecting its proposal [based on untimeliness], it will be eligible for award" and finding that plaintiff had standing to challenge its elimination from the competition "because there are sufficient facts to raise the question of whether the proposal was properly deemed late and, but for the determination of lateness would have been eligible for award").

In that regard, the case upon which the government chiefly relies as the basis for its contention that WIT lacks standing—Federal Data—is inapposite.  In that case, unlike this one, the plaintiff did not dispute that it had withdrawn itself from the procurement.  911 F.2d at 703 (observing that "Federal Data knowingly took itself out of the bidding prior to filing its amended protest, with the new count IV that underlies this appeal").  Plaintiff's challenge on the merits did not question the determination that it had withdrawn from the bidding; rather it sought to challenge the agency's requirement as part of a corrective action that all offerors' prices and technical scores be divulged to one another during a recompetition of the Solicitation.  Id. at 704.

In this case, by contrast, WIT's central argument on the merits is that its offer did not expire and that it did not take itself out of the competition.  The Court, accordingly, concludes that the standing issue in this case is closer to Castle-Rose and Global Military Marketing (two decisions whose reasoning the Court finds persuasive) than it is to Federal Data.  Accordingly, the Court possesses jurisdiction to address WIT's argument that the agency wrongfully excluded its offer from consideration on the grounds that it had expired and was not revived.

On the other hand, the Court's jurisdiction to address WIT's other claims—regarding whether the agency correctly found that Platinum was a responsible party—is dependent upon whether the Court determines, on the merits, that the Navy erred in failing to consider WIT's offer.  Because, as the Court holds below, the Navy's decision that WIT's offer expired and was not revived must be upheld, WIT lacked any chance of winning the award, regardless of the merits of its challenge to the agency's responsibility finding.  Therefore, the Court lacks jurisdiction to consider that aspect of WIT's protest, and grants the government's motion to dismiss count I of WIT's complaint, challenging the agency's responsibility finding with respect to Platinum.

## II.     Motions for Judgment on the Administrative Record

### A.     Standard of Review

#### 1.     Standard for Granting Judgment on the Administrative Record

Pursuant to RCFC 52.1, the court reviews an agency's procurement decision based on the administrative record.  Axiom Res. Mgmt., Inc. v. United States, 564 F.3d 1374, 1379 (Fed. Cir. 2009).  Thus, to resolve a motion for judgment on the administrate record, the court conducts an expedited trial on the paper record, making fact findings where necessary.  Bannum, Inc., 404 F.3d at 1354.  The court's inquiry is "whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record."  A&D Fire Prot., Inc. v. United States, 72 Fed. Cl. 126, 131 (2006) (citing Bannum, Inc., 404 F.3d at 1356).  Unlike a summary judgment proceeding, genuine issues of material fact will not foreclose judgment on the administrative record.  Bannum, Inc., 404 F.3d at 1356.

#### 2.     Standard of Review in Bid Protest Cases

The standard of review used to evaluate agency decisions in bid protest cases is the same as the standard used to evaluate agency action under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706 (2012).  See 28 U.S.C. § 1491(b)(4) (stating that "[i]n any action under this subsection, the courts shall review the agency's decision pursuant to the standards set forth in section 706 of title 5").  To successfully challenge an agency's procurement decision, a plaintiff must show that the decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A); Bannum, Inc., 404 F.3d at 1351.  "The arbitrary and capricious standard applicable here is highly deferential.  This standard requires a reviewing court to sustain an agency action evincing rational reasoning and consideration of relevant factors."  Advanced Data Concepts, Inc. v. United States, 216 F.3d 1054, 1058 (Fed. Cir. 2000) (citing Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281, 285 (1974)).

In a bid protest, the disappointed offeror "bears a heavy burden" in attempting to show that a procuring agency's decision lacked a rational basis.  Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1338 (Fed. Cir. 2001).  Indeed, such a challenge can succeed only where the agency "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or [the decision] is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."  Ala. Aircraft Indus., Inc.–Birmingham v. United States, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (alteration in original) (quoting Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co., 463 U.S. 29, 43 (1983)).

### B.  Navy's Determination that WIT's Proposal Expired and Was Not Revived

The issue before the Court on the merits is whether the Navy's determination that WIT's proposal had expired and that WIT declined to revive it was arbitrary, capricious or contrary to law.  The government and the intervenor contend that WIT's offer expired on June 23, 2014 because the Solicitation incorporated the language of  FAR 52.212-1(12), which required

offerors to hold their prices firm for thirty days after the proposals were due.  They contend that "[o]ffers that must be held firm for 30 days under FAR 52.212-1(12) logically expire if they are not accepted or otherwise extended within that time period."  Def.'s Mot. 24.  They further argue that WIT was properly eliminated from the competition because WIT declined to revive its offer (or waive the acceptance period) when given an opportunity to do so by the government, by email of December 23, 2014.  Def.'s Mot. 21; Intervenor's Mem in Supp. of Mot. 34.

For the reasons set forth in greater detail below, the Court agrees with the government and the intervenor that WIT's offer expired on June 23, 2014.  It further agrees that the Navy's conclusion that WIT declined to revive its offer and therefore withdrew itself from the competition was not arbitrary, capricious, or contrary to law.  Accordingly, the government and intervenor are entitled to judgment on the administrative record with respect to this issue.

## 1.      Navy's Finding that WIT's Offer Expired on June 23, 2014

As noted, the government argues that WIT's offer expired on June 23, 2014.  It notes that the Solicitation incorporated the language of FAR 52.212-1(12), providing as follows:  "Period for acceptance of offers.  The offeror agrees to hold the prices in its offer firm for 30 calendar days from the date specified for receipt of offers, unless another time period is specified in an addendum to the solicitation."  AR 1:80.  It further points out, correctly, that this period of acceptance was not modified in an addendum to the original solicitation or in any subsequent amendment to the Solicitation.  Def.'s Mot. 22.

In response, WIT emphasizes that FAR 52.212-1(12) imposes a minimum acceptance period but does not create an outer limit on the period for acceptance.  Pl.'s Reply & Resp. 8, May 5, 2015, ECF No. 41.  WIT further observes that it did not provide any specific period of acceptance in its final proposal revision.  Pl.'s MJAR 9-11, Apr. 8, 2015, ECF No. 26. Accordingly, it contends, under FAR 52.212-2, which was also incorporated into the Solicitation, the proposal did not expire and could be accepted by the government within a reasonable period of time.  See id. 10-11.  WIT cites International Graphics Division of Moore Business Forms v. United States, 4 Cl. Ct. 515 (1984), as supportive of its position.  Id. at 11.

The Court agrees with WIT that the purpose of FAR 52.212-1(12) is to establish a minimum duration period for offers in the context of commercial goods and services.  In other words, under FAR 52.212-1(12), a thirty-day period applies unless some longer period is either set forth in an addendum to the Solicitation or identified by the offeror in its proposal.  Cf. FAR 52.214-15 (entitled "Period for Acceptance of Bids" and providing for an acceptance period of sixty days unless another period is inserted by the bidder); FAR 52.214-16 (entitled "Minimum Bid Acceptance Period" and providing that the government will specify a required "minimum acceptance period" but will allow the bidder to specify a longer acceptance period); 60 Fed. Reg. 48231 (Sept. 18, 1995) (FAR 52.212-1 "contains solicitation instructions unique to government procurement and is based upon existing FAR language . . . . For the most part, the simplified paragraphs in the new provision do not contain new concepts.").  In this case, WIT did not specify a longer acceptance period in its original proposal or in its final proposal revision submitted on May 23, 2014.  Moreover, WIT's original proposal states that it "complies with the solicitation's requirements."  AR 33:1511.

14

WIT contends, nonetheless, that a reasonable period of time should be deemed to be the acceptance period rather than the thirty days specified in the Solicitation.  It cites FAR 52.212-2 in support of that argument.  That provision states as follows:

> A written notice of award or acceptance of an offer, mailed or otherwise furnished to the successful offeror within the time for acceptance specified in the offer, shall result in a binding contract without further action by either party.  Before the offer's specified expiration time, the Government may accept an offer (or part of an offer), whether or not there are negotiations after its receipt, unless a written notice of withdrawal is received before award.

AR 1:84-85.

WIT's reliance on this provision for the proposition that its offer remained open for a reasonable period of time, rather than for only thirty days, is unavailing.  The result of FAR 52.212-2, when read in conjunction with the language of FAR 52.212-1(12), is that within thirty days after WIT made its offer, the government could have accepted the offer, issued an award, and created a binding contract, unless WIT had formally withdrawn the offer before the expiration of the thirty-day period.  The Court is unaware of any authority for the proposition urged by WIT here, that an offer remains valid for a reasonable time even where, as here, a thirty-day acceptance period is specified in the solicitation and no longer period of time is set forth in the offer itself.

In that regard, WIT's reliance on International Graphics in support of its argument is misplaced.  In that case, the solicitation did not include a period of acceptance and, unlike the plaintiff and the government in that case, the intervenor did not include a government form along with its offer specifying that it would remain open for sixty days or for whatever period of time the offeror specified on the form.  Nor did its bid specify any period of acceptance.  Therefore the court concluded that it was appropriate to follow "general principles of contract law" under which an offer is construed to be open for a reasonable period of time where no specific provision is included in an offer limiting the time period.  4 Cl. Ct. at 520 n.9 (citing Restatement of Contracts (Second) § 41 (1981)).

International Graphics is readily distinguishable from this case.  Thus, in International Graphics the court stated that it was unaware of "[any] other document, contained in intervenor's bid or otherwise, which limits the period during which intervenor is bound to perform under the contract if its bid is accepted."  4 Cl. Ct. at 517.  Here, by contrast, the Solicitation did contain a limitation on the acceptance period, the thirty-day period specified at FAR 52.212-1(12), and WIT's proposal explicitly stated that its offer conformed to the Solicitation.

Indeed, GAO has treated solicitations, like the one at issue here, that incorporate limitations periods analogous to FAR 52.212-1(12) as setting a thirty-day period for acceptance of an offer (or bid).  See Consultants Ltd., B-286688.2, 2001 CPD ¶ 92 (Comp. Gen. May 16, 2001); Scot, Inc., B-295569 et al., 2005 CPD ¶ 66 (Comp. Gen. Mar. 10, 2005).  Although this Court is not bound by GAO's decisions, it is well established nonetheless that they are

"instructive in the area of bid protests." Centech Grp., Inc. v. United States, 554 F.3d 1029, 1038 n.4 (Fed. Cir. 2009).

Finally, WIT argues that the acceptance period set forth in FAR 52.212-1(12) exists only to protect the rights of offerors and that, accordingly, the government had "no legal right to deem WIT's proposal to have 'expired.'" Pl.'s Reply & Resp. 13. The Court does not quite follow WIT's line of reasoning on this point. While it is certainly correct that WIT had the right to waive the expiration period (an issue addressed below), the existence of that right does not bear on whether or not the period expired on June 23, 2014. And it is the argument of the government and the intervenor in this case that when presented with the opportunity to waive the expiration period, WIT declined to do so.

In short, the Court concludes that WIT's offer expired on June 23, 2014. It turns now to the question of whether the agency's conclusion that WIT declined to revive that offer or waive the acceptance period was arbitrary, capricious, or contrary to law.

## 2. The Navy's Conclusion that WIT Declined to Revive Its Offer

Where an offer has expired, an offeror may "revive the offer either expressly or impliedly through conduct" (Camden Shipping Corp.v. United States, 89 Fed. Cl. 433, 440 (2009) (citing Williston on Contracts § 5.5)) but "only if such revival does not compromise the integrity of the competitive process or prejudice other offerors." Id. at 440 (citing, inter alia, Rice Servs., Ltd. v. United States, 25 Cl. Ct. 366, 368 (1992); Int'l Graphics Div. of Moore Bus. Forms, 4 Cl. Ct. at 520)). One context in which such a waiver may be found to have occurred is when "following expiration of the acceptance period, the bidder is still willing to accept an award on the basis of the bid as originally submitted." Int'l Graphics Div. of Moore Bus. Forms, 4 Cl. Ct. at 51 (citing Cecile Indus., Inc., B-207277.3, 82-2 CPD ¶ 299 (Comp. Gen. Sept. 30, 1982); Surplus Tire Sales, 53 Comp. Gen. 737, 738 (1974)); see also Sublette Electric, Inc., B-232586, 88-2 CPD ¶ 540 (Comp. Gen. Nov. 30, 1998) (holding that "where the acceptance period has expired on all proposals, the contracting officer may allow the successful offeror to waive the expiration of its proposal acceptance period without reopening negotiations to make an award on the basis of the offer as submitted since waiver under these circumstances is not prejudicial to the competitive system"). Another circumstance in which such a waiver may be found is where the government "simply ask[s] the offerors to revive bids that ha[ve] expired" and the "reviving offerors [take] no action that could compromise the integrity of the bidding system." Rice Servs., Ltd., 25 Cl. Ct. at 368.

In this case, the agency decided not to wait until after it made an award determination to request a waiver.[8] Instead, as in Rice Services, Ltd., it asked both offerors whether they wanted to revive their offers by validating the prices in their final proposal revisions and agreeing that

---

[8] The decision to request that the parties validate their offers before, rather than after, an award determination appears to the Court to have been prudent, given the lengthy and contentious nature of this procurement, the fact that WIT had dropped its price by over fifty percent in its May 23, 2014 proposal, and the fact that the agency anticipated that it might take several more months before an award decision could be finalized.

they would remain valid up through the time the agency contemplated making a final award decision.

The agency found that WIT declined to revive its offer when given an opportunity to do so.  The Court's review of this finding is limited to a determination of whether "(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure."  Weeks Marine, Inc. v. United States, 575 F.3d 1352, 1358 (Fed. Cir. 2009) (quoting PGBA, LLC v. United States, 389 F.3d 1219, 1225 (Fed. Cir. 2004)).  In conducting such review, the Court may not "substitute its judgment for that of the agency."  Turner Constr. Co., Inc. v. United States, 645 F.3d 1377, 1383 (Fed. Cir. 2011).

On this record, the Court cannot find that the agency's reading of WIT's December 23, 2014 email was arbitrary and capricious or lacked a rational basis.  The December 23, 2014 email from Ms. Smith to WIT's President, Eugene Smoot, advised him that she was emailing him in reference to WIT's May 23, 2014 proposal.  AR 42:1613.  She indicated that the purpose of her email was to secure from WIT a commitment that the pricing set forth in that proposal was still "valid" and would remain valid until March 1, 2015.  Id.  She explained that the award had been and was being delayed due to the fact that legal counsel was tied up with "other urgent actions that they must address prior to the end of the month" and the fact that the package for the Solicitation would have to be forwarded to headquarters for review before an award was made.  Id.; see also AR 49:1621 (January 30, 2015 email from Ms. Smith to Eugene Smoot noting that "[d]ue to the numerous protests, we are having to forward the package to headquarters for review").

Eugene Smoot responded to Ms. Smith's email on the same day it was sent.  See AR 45:1616.  But Mr. Smoot did not provide the requested confirmation that WIT was willing to stand by the prices in the offer it had made on May 23, 2014.  See id.  To the contrary, Mr. Smoot's response began by referencing the amount of time that had passed since that offer had been made, noting that "[a]s of today it has been two hundred and fourteen (214) days since our proposal was submitted."  AR 45:1616.  Then, rather than confirming that WIT was still willing to accept a contract award on the conditions set forth in its May 23, 2014 offer,  he stated that "WIT Associates Inc. want and need to submit a final proposal revision with updated rates given the economic conditions."  Id.

By contrast, Platinum's response to an essentially identical email that Ms. Smith sent to its President, Mario Smoot (also sent on the same day, December 23, 2014), was unequivocal.  See AR 44:1615.  Its first sentence stated that "I have no choice but to extend my prices until the 1st of March 2015."  Id.  Thus, Mario Smoot explained, because Platinum had been told in November of 2013 that it had been awarded the contract and that it should proceed, it had already incurred the costs of purchasing trucks, trailers, packing materials, and forklifts as well as the costs of shipping items to Guantanamo.  Id.

The agency's conclusion that this email exchange evinced Platinum's willingness but WIT's refusal to stand by their original offers was rational.  The entire thrust of WIT's response was that, as a result of economic conditions, it not only "want[ed]" to submit a proposal with updated rates, but it "need[ed]" to.  See also AR 47:1619 (January 27, 2015 email from Eugene

Smoot to Vera Smith complaining that WIT had not received a response to the December 23, 2014 "communication advising you that we need to submit revised pricing" (emphasis supplied)); AR 50:1622 (January 31, 2015 email from Eugene Smoot to Vera Smith observing that "you did not address our second notice on January 27, for WIT's need to submit revised/updated pricing. Please address" (emphasis supplied)). Although WIT's email did not explicitly answer "no" to the question of whether its offered price was still valid and would continue to be valid through March 1, it is difficult to read its response that it "want[ed] and need[ed]" to adjust its prices in light of the passage of time and changed economic conditions in any way other than as a negative response to Ms. Smith's inquiry.

By contrast, WIT's proffered interpretation of Ms. Smith's email and explanation of its response are unsupported by the record. WIT claims that Ms. Smith's email "notified WIT of [the agency's] intent to amend the Solicitation to require the period of acceptance to extend to '1 March 2015.'" Pl.'s MJAR 11. It further asserts that "[e]xpecting a soon-to-be-issued amendment to the Solicitation, as required by the Solicitation at FAR 52.212-1(12), WIT responded to the Contract Specialist's email by requesting that the amendment allow for new FPRs." Id. According to WIT "[t]his request for the Agency to allow for revised FPRs was based on the anticipation that, with the passage of time, WIT may have been able to provide even more competitive pricing to the government." Id. at 11-12.

First, WIT's claim that the email from Ms. Smith notified WIT of the agency's intent to amend the Solicitation finds no support in the language of the email, which contained no declaration of any intent by the agency other than perhaps an implicit statement of an intent to make an award decision by March 1, 2015. Rather than containing a declaration of agency intent to issue an amendment to the Solicitation to extend the acceptance period, the email posed a question to WIT about the continued validity of WIT's May 23, 2014 prices.[9]

_____

[9] WIT complains that Ms. Smith's email did not advise WIT that its proposal had expired. Pl.'s Reply & Resp. 4, 23. Of course, the agency was under no obligation to explicitly advise WIT of something of which it should have been aware: that its proposal had expired within thirty days of its submission, as expressly provided in the Solicitation.

WIT also contends that the agency misled it by failing to respond to its emails requesting the opportunity to submit revised prices. Pl.'s Reply & Resp. 24-26. It notes that Ms. Smith had recommended on January 27, 2015 that the award be given to Platinum because WIT's offer had expired and WIT had declined to extend it. Given that recommendation, WIT argues, she was disingenuous in her email of January 30, 2015, when she apologized for the delay in responding, noted that "hopefully the matter will be resolved soon," and stated that she would talk to the contracting officer about what the government would do if the contract were not awarded by March 31, 2015 (when WIT's bridge contract was to expire). AR 49:1621.

The Court disagrees with WIT's characterization of Ms. Smith's conduct. While WIT reads an intent to mislead into Ms. Smith's failure to provide a substantive response to its request to submit updated prices, the Court is of the view that the more likely explanation is that Ms. Smith acted out of an abundance of caution in not sharing with WIT her own recommendations or the agency's then on-going deliberative process with respect to WIT's request.

Nor was the agency required to issue an amendment to the Solicitation in order "to require the period of acceptance to extend to '1 March 2015,'" as WIT contends.  Pl.'s MJAR 11.  As noted above (and as WIT itself elsewhere recognizes), an agency may request that an offeror revive an expired offer (as the agency did here), so long as doing so "does not compromise the integrity of the competitive process or prejudice other offerors."  Rice Servs., Ltd., 25 Cl. Ct. at 368; see also Pl.'s Reply & Resp. 10.  WIT's citation of FAR 52.212-1(12) for a contrary proposition is unpersuasive.

WIT argues that "under the Solicitation at FAR.52.212-1(12), the Agency was required to issue an amendment to the Solicitation if it required the period of acceptance of offers to be more than 30 days, which it failed to do."  Pl.'s MJAR 9.  The purpose of FAR 52.212-1(12) was to establish that unless an addendum to the Solicitation stated otherwise, the period for acceptance of an offer would be thirty days from the day the offer is made.  FAR 52.212-1(12) has no application here, because what is at issue is the waiver of an acceptance period, not its extension.[10]

Indeed, WIT's claim that it interpreted the email to be expressing the agency's intent to amend the Solicitation to extend the acceptance period until March 1, 2015 is not credible because it conflicts with WIT's stated belief that the acceptance period had not expired.  It is therefore not surprising that there is no reference in WIT's responding email to an anticipated amendment to the Solicitation.  And WIT's suggestion that it was anticipating offering the agency even lower prices in a new final proposal revision is also not credible given the fact that the email cited the passage of time and economic conditions as giving rise to the "need" to revise its price is coupled with the fact that WIT's revised price proposal was fifty-nine percent lower than its initial proposal.

In any event, as the GAO has repeatedly held, when an agency requests an extension of an offer that has expired or is about to expire, "it is the responsibility of the firm that desires to extend its bid to communicate assent, either by ensuring that the agency receives an express extension or by conduct from which the agency can infer the bidder's intent to extend."  Pegasus Alarm Assoc., B-225597, 87-1 CPD ¶ 417 (Comp. Gen. Apr. 16, 1987); see also Brickwood Contractors, Inc., B-290444, 2002 CPD ¶ 121 at 7 (Comp. Gen. July 3, 2002); Discount Mach. and Equip. Inc., B-244392, 91-2 CPD ¶ 334 at 3 (Comp. Gen. Oct. 15, 1991).  In this case, even assuming that it was WIT's intent to simply request that the agency consider allowing offerors to revise their price proposals, and that it did not intend to decline to adhere to its May 23, 2014 price, that intent was very poorly communicated, to say the least.  As such, it certainly was not unreasonable for the agency to conclude that WIT had declined to stand by and extend its offer based on the prices in its May 2014 proposal.[11]

---

[10] For similar reasons, there is no merit to WIT's argument that the agency violated FAR 15.206(a), which requires a contracting officer to amend a solicitation when "the government changes its requirements or the terms and conditions."  Pl.'s MJAR at 13-14.

[11] The Court is not persuaded by WIT's assertions that if it had intended to withdraw its offer it would have done so in writing, as required by FAR 15.208(e), or by its observation that it

The Court also finds unpersuasive WIT's argument that the Navy's decision violated FAR provisions requiring the agency to give notice to any offeror who was removed from competition.  Pl.'s MJAR 14-16 (citing FAR 15.306(c)(3) and FAR 15.503(a)(1)).  Those provisions apply only to "offerors," giving them a right to notice when a proposal is excluded from the competitive range based on the rating of the proposal.  As the government correctly points out, because WIT's offer had expired and was not revived, it was no longer an offeror with a right to be given notice that it had been removed from the competition.  Def.'s Mot. 31.

In short, WIT's contentions that the agency erroneously concluded that its offer had expired and not been revived lack merit.  Accordingly, the government and the intervenor are entitled to judgment on the administrative record with respect to Counts II and III of WIT's complaint.[12]

## CONCLUSION

On the basis of the foregoing, the Motions to Dismiss filed by the government and the intervenor are **GRANTED IN PART** and **DENIED IN PART.**  Accordingly, Count I of

---

had demonstrated a continuing commitment to seek a contract award by filing protests, AR 26:1130-43, submitting a revised proposal, AR 33:1509-91, and requesting status updates.  AR 37:1602; AR 41:1612.  The issue before the Court is not whether WIT withdrew its offer, but whether the offer expired and whether the agency's decision that WIT declined to revive it was rational based on the record before it.  And WIT's interest in securing a contract award, which the Court recognizes, does not necessarily translate into a commitment to stand by the offer it made in May 2014, particularly where, as in this case, it expressed a need to submit revised pricing when asked to validate its price.

[12] The government and the defendant-intervenor have moved to strike exhibits 1, 5, 6, and 13 of WIT's complaint and all references to those exhibits in its pleadings on the grounds that they were not part of the administrative record.  Def.'s Mot. Strike 5-6, March 27, 2014, ECF No. 24; Intervenor's Mot. Strike 2-3, March 27, 2014, ECF No. 25.  Pursuant to RCFC 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  "Courts view motions to strike with disfavor and rarely grant them."  Fisherman's Harvest, Inc. v. United States, 74 Fed. Cl. 681, 690 (2006) (citing 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1380, at 394 (3d ed. 2004)).

In this case, exhibits 1, 5, 6, and 13 were not part of the administrative record filed with the Court, and WIT did not move to supplement the administrative record to include them.  The Court, accordingly, has not considered these exhibits or any arguments based on them in deciding the motions before it.  See Axiom Res. Mgmt., Inc., 564 F.3d at 1381.  Therefore, the government's motion to strike is **DENIED** as moot.  See Brookfield Constr. Co. v. United States, 661 F.2d 159, 163 n.8 (Ct. Cl. 1981) ("We therefore deny the motion to strike as in effect moot because [it is] directed to an affidavit which has no part in our decision.").

plaintiff's complaint is **DISMISSED**.  Further, the plaintiff's Motion for Judgment on the Administrative Record is **DENIED**, and the Cross-Motions for Judgment on the Administrative Record filed by the government and the intervenor are **GRANTED**.  Finally, the motions of the government and the intervenor to strike exhibits 1, 5, 6, and 13 are **DENIED**.

      **IT IS SO ORDERED.**

s/ Elaine D. Kaplan               
ELAINE D. KAPLAN
Judge
